FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 13, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ARTHUR A., | No. 1:20-CV-03203-JAG |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[1] | |
| Defendant. | |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 14, 15. Attorney Timothy W. Anderson represents Arthur A. (Plaintiff); Special Assistant United States Attorney Danielle R. Mroczek represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

# I.     JURISDICTION

Plaintiff protectively filed an application for Supplemental Security Income on March 26, 2018 alleging disability since July 1, 2016,[2] due to diabetes, PTSD, depression, whole body numbness, restlessness, bilateral foot numbness/tingling, abdominal pain and nausea, chronic headaches, weight loss, and short term memory loss. Tr. 60, 160, 188. The applications were denied initially and upon reconsideration. Tr. 94-102, 107-13. Administrative Law Judge (ALJ) Chris Stuber held a hearing on April 17, 2020, Tr. 33-59, and issued an unfavorable decision on April 27, 2020. Tr. 10-32. Plaintiff requested review by the Appeals Council and the Appeals Council denied the request for review on September 14, 2020. Tr. 1-6. The ALJ's April 2020 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on November 17, 2020. ECF No. 1.

# II.     STATEMENT OF FACTS

Plaintiff was born in 1976 and was 41 years old on the date the application was filed. Tr. 26. He has a high school education and completed a certificate in business technology and accounting. Tr. 40, 189.

# III.     STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is

---

[2] At the hearing Plaintiff amended the alleged onset date to the protected filing date, March 26, 2018, for administrative purposes. Tr. 13.

defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1098; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## IV.  SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four the claimant bears the burden of establishing a prima facie case of disability. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. § 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) that Plaintiff can perform other substantial gainful activity and (2) that a significant number of jobs exist in the national economy which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1497-1498 (9th Cir. 1984); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).  If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled. 20 C.F.R. § 416.920(a)(4)(v).

## V.     ADMINISTRATIVE FINDINGS

On April 27, 2020 the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act. Tr. 10-32.

At **step one**, the ALJ found Plaintiff had not engaged in substantial gainful activity since March 26, 2018 the application date. Tr. 15.

At **step two**, the ALJ determined Plaintiff had the following severe impairments: polysubstance abuse; post-traumatic stress disorder (PTSD); major depressive disorder; diabetes mellitus; peripheral neuropathy; and right shoulder internal derangement. Tr. 15.

At **step three**, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 16.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found he could perform light work, but with the following nonexertional limitations:

> [Plaintiff] is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk about two hours in an eight-hour workday, and he can sit for about six hours in an eight-hour workday. He can occasionally climb ramps and stairs but never ladders, ropes, or scaffolds. He can frequently balance, but he can only occasionally stoop, kneel, crouch, and crawl. He can perform occasional bilateral overhead reaching and frequent bilateral handling, fingering, and feeling. He can have only occasional exposure to extreme cold, extreme heat, hazardous machinery, unprotected heights, and irritants such as fumes, odors, dust, gases, and poorly ventilated areas. He is able to understand, remember, and carry out simple, routine instructions and have only brief, superficial interactions with coworkers and the public. Within such perimeters, he would be able to maintain concentration, persistence, and pace.

Tr. 17-18.

At **step four**, the ALJ found Plaintiff has no past relevant work. Tr. 26.

At **step five**, the ALJ found that, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that existed in significant numbers in the national economy, including the jobs of assembler, electrical accessories I; routing clerk; and production assembler. Tr. 27-28.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from the alleged onset date through the date of the decision. Tr. 28.

## VI.    ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff raises the following issues for review: (1) whether the ALJ properly evaluated the medical opinion evidence; and (2) whether the ALJ conducted a proper step-five analysis.

## VII.    DISCUSSION

A.    **Medical Opinion Evidence.**

Plaintiff alleges the ALJ erred by improperly disregarding the opinion of William Drenguis, M.D. in favor of Wayne Hurley, M.D., and Deborah Baylor, M.D. ECF No. 14 at 4-10.

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01, (Jan. 18, 2017); 20 C.F.R. § 416.920c. The new regulations provide the ALJ will no longer give any specific evidentiary weight to medical opinions or prior administrative medical findings. *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 416.920c(a). Instead, the ALJ must consider and evaluate the persuasiveness of all medical opinions or

1  prior administrative medical findings from medical sources. 20 C.F.R. §
2  416.920c(a) and (b). The factors for evaluating the persuasiveness of medical
3  opinions and prior administrative findings include supportability, consistency, the
4  source's relationship with the claimant, any specialization of the source, and other
5  factors (such as the source's familiarity with other evidence in the file or an
6  understanding of Social Security's disability program). 20 C.F.R. §
7  416.920c(c)(1)-(5).

      Supportability and consistency are the most important factors, and the ALJ must explain how both factors were considered. 20 C.F.R. § 416.920c(b)(2). The ALJ may explain how he or she considered the other factors, but is not required to do so, except in cases where two or more opinions are equally well-supported and consistent with the record. *Id.* Supportability and consistency are explained in the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c(c)(1)-(2).

      The Ninth Circuit recently addressed the issue of whether the new regulatory framework displaces the longstanding case law requiring an ALJ to provide specific and legitimate reasons to reject an examining provider's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). The Court held that the new

regulations eliminate any hierarchy of medical opinions, and the specific and legitimate standard no longer applies. *Id.* at 788-89, 792. The Court reasoned the "relationship factors" remain relevant under the new regulations, and thus the ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id.* at 790, 792. Even under the new regulations, an ALJ must provide an explanation supported by substantial evidence when rejecting an examining or treating doctor's opinion as unsupported or inconsistent. *Id*. at 792.

On September 4, 2018, Plaintiff attended a consultative examination with Dr. Drenguis, who administered a clinical interview and physical exam and provided an assessment of Plaintiff's functioning. Tr. 279-84. Dr. Drenguis diagnosed Plaintiff with poorly controlled insulin dependent diabetes mellitus and right shoulder internal derangement "status post open reduction and internal fixation x2." Tr. 283. Dr. Drenguis opined Plaintiff could stand and walk at least two hours in an eight hour workday and sit about six hours in an eight hour workday; he could lift and carry 20 pounds occasionally and ten pounds frequently; he could occasionally climb steps and stairs and occasionally stoop, crouch, kneel, and crawl; he should never climb ladders, scaffolds, or ropes and should never balance; he could occasionally reach overhead and forward and frequently handle, finger, and feel; and he had limited ability to work at heights, with heavy machinery, or extremes in temperature. Tr. 284.

The ALJ found this opinion persuasive because it was generally consistent with the record as a whole, "except as to limited forward reaching and preclusion of balancing," which the ALJ found was inconsistent with Dr. Drenguis's shoulder findings upon exam and the medical record. Tr 24. The ALJ also found there was no evidence of ongoing problems with balance in the record. Tr. 24.

ORDER GRANTING DEFENDANT'S MOTION . . . - 7

      Plaintiff argues the ALJ erred by rejecting the consultative examiner's opinion in favor of the non-examining state agency examiners, that the ALJ's findings were impermissibly vague and conclusory, and the ALJ erred by substituting his own medical opinion for that of a physician. ECF No. 14 at 8-10. Defendant argues the ALJ reasonably found that Dr. Drenguis's assessment of occasional forward reaching was unpersuasive due to its inconsistency with the longitudinal record and insufficient internal support, and that Plaintiff fails to identify any errors in the ALJ's acceptance of Dr. Hurley and Dr. Baylor. ECF No. 15 at 5-8. Defendant points out that Plaintiff challenges only the ALJ's rejection of Dr. Drenguis's restriction to occasional forward reaching. ECF No. 15 at 5, *see* ECF No. 14 at 6-9.

      The Court finds the ALJ did not err. He discussed the most important factors of supportability and consistency, as required by the revised rules. *See Woods*, 32 F.4th at 791-792 (9th Cir. 2022) (noting the factors of supportability and consistency as the most important factors). In fact, the ALJ found Dr. Drenguis's opinion generally persuasive as it was largely consistent and supported by the record as a whole, which the ALJ explained showed evidence of poorly controlled diabetes with diabetic neuropathy, along with "some ongoing pain and limitation in the [Plaintiff's] right shoulder." Tr. 24.

      The ALJ reasonably determined Dr. Drenguis's exam lacked support for the limitation in forward reaching, however, explaining his exam showed only some limitation in shoulder movement and that no other provider had opined Plaintiff was limited in forward reaching. Tr. 24, *see* 279-84. In March 2018, for example, Plaintiff's primary care provider noted his reports of chronic right shoulder pain with history of motor vehicle accident in 2005 and shoulder surgery but advised him "the pain you are experiencing is chronic in nature and probably a good expectation would be to consider this your new normal." Tr. 264. He was advised resting his arm "not only helps reduce pain, but may be all that you need to

properly heal," and that he should "try to do as many tasks as possible with the unaffected arm" and "avoid activities that put a lot of strain on shoulder like push-ups." *Id.* Additionally, at an ER visit for high blood sugar in September 2018, the same month he saw Dr. Drenguis, Plaintiff denied any musculoskeletal pain and had "no complaints other than some fatigue." Tr. 304-05. At an ER exam/wellness check in January 2020, Plaintiff was noted to have full range of motion in his upper extremities and "no obvious abnormality on exam." Tr. 389. The ALJ reasonably concluded that Dr. Drenguis's limits on forward reaching were not supported by his own exam and inconsistent with the medical record as a whole. Even if the evidence could be interpreted more favorably to Plaintiff, if it is susceptible to more than one rational interpretation, the ALJ's ultimate conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The ALJ's findings are therefore supported by substantial evidence.

        In September and December 2018 the state agency medical consultants, Dr. Hurley and Dr. Baylor, opined Plaintiff could occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds; he could stand and walk a total of two hours and sit for about six hours in an eight hour workday; he should never climb ladders, ropes, or scaffolds, but he could occasionally climb ramps and stairs and occasionally stoop, kneel, crouch, and crawl; he could frequently balance, occasionally reach overhead, and frequently handle, finger, and feel; he should avoid concentrated exposure to extreme heat, extreme cold, fumes, odors, dusts, gases, poor ventilation, and hazards. Tr. 69-71, 85-87.

        The ALJ found the opinions of Dr. Hurley and Dr. Baylor persuasive because they were "supported by a summary of evidence including findings by the consultative examiner [Dr. Drenguis] and findings in the treatment notes." Tr. 24. The ALJ reasonably assessed the opinions of the state agency consultants and offered sufficient explanation for his reliance on their opinions, including evidence of Plaintiff's minimal treatment for physical complaints and his relatively

unremarkable physical examinations, which showed normal strength and movement of his extremities. Tr. 24, *see e.g.*, Tr. 283, 304-05, 348-49, 389.

The Court finds the ALJ's discussion of the medical opinion evidence is supported by substantial evidence.

**B.    Step Five.**

Plaintiff contends the ALJ erred in failing to include all limitations in the hypothetical posed to the vocational expert, and in failing to identify a sufficient number of jobs at step five. ECF No. 14 at 2, 10-15.

First, Plaintiff argues that the hypothetical posed to the vocational expert failed to account for all of Plaintiff's limitations. ECF No. 14 at 10-13. Plaintiff's argument is based on successfully showing that the ALJ erred in his treatment of the evidence by not including Dr. Drenguis's limitation to forward reaching. *Id*. Because the Court finds that the ALJ did not harmfully err in evaluation of Dr. Drenguis's opinion, Plaintiff's first argument is without merit.

Next, Plaintiff challenges the ALJ's finding that there are a significant number of jobs in the national economy that Plaintiff could perform. ECF No. 14 at 13-15. Specifically, Plaintiff contends that the combined number of available jobs, approximately 28,100 jobs in the national economy, does not constitute a significant number of jobs.

At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). The number of jobs available in the national economy can be calculated by aggregating the numbers for multiple occupations. 20 C.F.R. § 416.966. The Ninth Circuit has not established a "bright-line rule for what constitutes a 'significant number' of jobs." *Beltran,* 700 F.3d at 389. However, the Ninth Circuit has held the availability of 25,000 national jobs presents a "close call," but constitutes a

significant number of jobs. *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528-29 (9th Cir. 2014). Additionally, "the statute in question indicates that the 'significant number of jobs' can be *either* regional jobs (the region where a claimant resides) *or* in several regions of the country (national jobs)." *Beltran*, 700 F.3d at 389 (emphasis in original).

"There are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can do: (1) by the testimony of a [VE], or (2) by reference to the Medical-Vocational Guidelines...." *Id*. A vocational expert's testimony constitutes substantial evidence in support of an ALJ's findings. *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002). The *Gutierrez* court specifically acknowledged the "highly deferential" standard of review owed to the ALJ's step five finding before proceeding to review the jobs numbers identified for legal sufficiency. *Gutierrez*, 740 F.3d at 527-28 (citing *Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir. 1986) (whether there is a significant number of jobs the claimant is able to perform is a question of fact for the ALJ)).

At the hearing, the vocational expert testified that an individual with Plaintiff's RFC could perform the jobs of assembler electrical accessories I, with an estimated 9,700 jobs in the national economy; routing clerk, with an estimated 14,000 jobs in the national economy; and production assembler, with an estimated 4,400 jobs in the national economy. Tr. 27, 54-55. The vocational expert did not provide regional job numbers. *Id.* The vocational expert testified that these job numbers represent a 75 percent reduction in national job numbers for each job, which he reduced to account for the erosion in available jobs due to the restriction to two hours of standing/walking and six hours of sitting in the ALJ's hypothetical. Tr. 27, 54-55. The vocational expert testified where his testimony was inconsistent with the DOT, he based his answers on his professional experience, education, review of professional literature, development of job analyses, and completion of

occupation research. Tr. 57. The ALJ found, pursuant to Social Security Ruling (SSR) 00-4p that the vocational expert's testimony was consistent with the information contained in the DOT or otherwise based upon his professional experience, and that based on the vocational expert's testimony, along with Plaintiff's age, education, and residual functional capacity, there was "other work that exists in significant numbers in the national economy" that Plaintiff could perform. Tr. 27-28, see SSR 00-4p, 2000 WL 1898704, at *2.

The Court finds the ALJ did not err. The number of national jobs the vocational expert identified is above the 25,000 national jobs that the Ninth Circuit has found constitutes a significant number of jobs and thus constitutes a significant number for the purposes of the step five finding in this case. The ALJ's step five findings are supported by substantial evidence.

## VII.  CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error and is affirmed. Therefore, **IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**IT IS SO ORDERED.**

DATED September 13, 2022.



_____
JAMES A. GOEKE
UNITED STATES MAGISTRATE JUDGE